## Case No. 12,058.

### In re ROSENFIELD.

[1 N. B. R. 575 (Quarto, 161); [1] 7 Am. Law
Reg. (N. S.) 618; 1 Am. Law T. Rep.
Bankr. 81.]

District Court, D. New Jersey. 1868.

BANKRUPTCY — DISCHARGE — SPECIFICATIONS
AGAINST—DEBT CREATED BY FRAUD.

1. The creation of a debt by fraud is not a ground for refusing a discharge to a bankrupt.
[Cited in Re Seeley. Case No. 12,628.]
[Approved in Re McEachran, 82 Cal. 224, 23 Pac. 48.]

---

[1] [Reprinted from 1 N. B. R. 575 (Quarto, 161). by permission.]

2. A specification stating that a debt had been created by fraud is not a good specification, and will be stricken out on motion.

3. A bankrupt cannot be examined for the purpose of showing that the debt was created by fraud.

4. A fraudulent conveyance made, or a fraudulent preference given, before the passage of the bankrupt act [of 1867 (14 Stat. 517)], are neither of them good grounds upon which to oppose a discharge. Such a conveyance or preference does not come within the terms of section 29 of said act, and a specification alleging such a conveyance or preference will be stricken out on motion.

[Cited in Re Moore, Case No. 9,751. Followed in Re Hollenshade, Id. 6,610. Cited in Re Hussman, Id. 6,951. Approved in Re Keefer, Id. 7,636. Disapproved in Re Cretiew, Id. 3,390.]

5. The difference explained between the meaning of the following phrases in section 29, namely, "since the passage of this act," and "subsequently to the passage of this act."

[Criticised in Re Cretiew, Case No. 3,390.]

6. By the term "fraudulent preference," used in item 9 of section 29, is meant only a preference in fraud of the bankrupt act; that is, contrary to its provisions.

[Followed in Re Hollenshade, Case No. 6,610. Cited in Re Seeley, Id. 12,628.]

[In the matter of Isaac Rosenfield, Jr., a bankrupt. For prior proceedings in this litigation, see Case No. 12,059.]

Abbett & Fuller, for bankrupt.

McCarter & Goepp, for creditors.

FIELD, District Judge. There are two questions, the determination of which will dispose of all the exceptions taken to the specifications filed in this case.

First. Is the creation of a debt by fraud, a good ground upon which to oppose the discharge of a bankrupt? The 33d section of the act provides: "That no debt created by the fraud of the bankrupt, shall be discharged under this act; but the debt may be proved, and the dividend thereon shall be a payment on account of said debt." Why, then, should a creditor be allowed to object to the discharge of a bankrupt, on the ground that the debt due to him was created by fraud? So far as he is concerned, the bankrupt is not discharged at all. Such creditor is in fact a favored creditor; like other creditors, he is entitled to receive a dividend; but this dividend, instead of being a payment in full, is only a payment on account, and the bankrupt is forever liable for the balance of the debt; and this balance is much more likely to be paid, if the bankrupt is discharged from the payment of all his other debts, than if he was not discharged at all. Such a creditor, therefore, has not only no right to oppose the discharge, but it is not his interest to do so. This no doubt is the reason why the fact that the debt was created by fraud, is not, by the 29th section, made a ground for refusing a discharge. If the question, therefore, had not before arisen, I should have had little or no doubt with regard to it. But it is not a new question. It has been before Judge Blatchford, in the Southern district of New York, upon two occasions: once in Rathbone's Case [Case No. 11,582], and again in the Case of Tallman [Id. 13,739]. In the first case, he held, that a specification, stating that the debt had been created by fraud, was not a good specification; and in the second, that a register was right in refusing to allow a bankrupt to be examined for the purpose of showing that the debt was created by fraud. I concur with him entirely in his opinion.

Second. The second question is one about which there is, I will not say more doubt, but perhaps more room for discussion; and as the counsel for the creditors have urged their views with so much force and earnestness, I have felt bound to give them a very careful consideration. Is a fraudulent conveyance made before the passage of the bankrupt act, a good ground on which to oppose a discharge? The 29th section contains an enumeration of seventeen distinct acts, any one of which, if shown to have been committed by the bankrupt, is an absolute bar to his discharge. These acts are in the nature of offences, created and defined by the bankrupt law, the penalty for the commission of which by the bankrupt, is, the forfeiture of his right to a discharge. Now, suppose there was no limitation whatever in the law itself, as to the time within which these acts must have taken place, or been performed. Would it not have been necessary to aver, and prove, that they had been committed since the passage of the law, in order to deprive the bankrupt of his right to a discharge? To have held that acts, committed before its passage, were offences against the bankrupt law, would have been to make that law, if not an ex post facto law, in the strict sense of the term, yet at least a law retroactive or retrospective in its character. Now, although to give a law a retrospective operation, may not render it absolutely unconstitutional, yet as a general rule, it is a very objectionable feature in any law; and an intention upon the part of the legislature to give a law such a character, will never be presumed, in the absence of express words to that effect. But it is said, there is a limitation as to time expressly annexed to some of the acts enumerated in the 29th section, that limitation being expressed by the words "since the passage of this act," and as this limitation is not annexed to other acts, therefore, upon the principle "Expressio unius est exclusio alterius," it is to be presumed that with regard to these other acts, it is sufficient to show that they were committed at any time, whether before, or since, the passage of the law. If all the provisions of the section are, upon general principles, subject to the restriction that the acts must have been done after the passage of the law, why in express terms impose that restriction on two only out of the seventeen?

But, from a close examination of the whole section, I think it will appear, that the

maxim alluded to has no application in reference to it. To the first four items, no limitation as to time is annexed; but then they are acts which could only be committed after proceedings in bankruptcy had been commenced. The fifth item has a limitation expressed by the words, "within four months before the commencement of such proceedings." But this limitation of four months was meant to be confined to the fifth item alone. It became necessary, therefore, to annex to the following items a different limitation. The sixth item, accordingly, begins with these words: "or if since the passage of this act." Now, if it was intended that the limitation should apply to all the following items, from the sixth to the fourteenth, it certainly was not necessary to repeat it at the beginning of each clause. The 39th section, which contains an enumeration of what are deemed acts of bankruptcy, has the same limitation as to time, expressed by the words, "after the passage of this act," annexed to the first act described; and there can be no doubt that it is meant to extend to all the other acts thereon enumerated; but it was not thought necessary to repeat it at the beginning of each subsequent clause. But it is said the fourteenth item of the 29th section has a limitation expressly annexed to it, substantially the same as that annexed to the sixth item; and if the limitation contained in the sixth item extends to all the intervening items without being repeated, why would it not also have extended to the fourteenth item? The fact that the very same limitation as that contained in the sixth item, is expressly annexed to the fourteenth, shows that it was not intended to apply to the intervening items. But it will be perceived, that the language in which the limitation is expressed in the fourteenth item, is slightly different from that used in the sixth. Instead of being "since the passage of this act," it is "subsequently to the passage of this act." Now let us see if we cannot account for this difference in phraseology, and thus explain why it was deemed necessary to repeat the limitation in the fourteenth item, slightly varied in form. The change consists in substituting subsequently for "since." These words, although similar in meaning, are not identical. "Since," according to Worcester, means, "from the time of;" and its meaning is illustrated by a line from Milton:

"He since the morning hour set out from Heaven."

And Webster in his Dictionary says, "The proper signification of 'since' is, after, and its appropriate sense includes the whole period between an event and the present time. 'I have not seen my brother since January.'" "Subsequently," according to the same authorities, means, "at a later time," or "afterwards," that is, at any time afterwards.

Now, the act described in the fourteenth item, is that of a merchant or tradesman, not keeping proper books of account. If the limitation had been expressed by the words, "since the passage of this act," it might have been said that to bring a merchant or tradesman within its provisions, he must, during the whole period from the passage of the act, have neglected to keep proper books of account. Whereas, by using the word "subsequently," it would be sufficient to show that he had, at any time after the passage of the act, neglected to keep proper books of account. And this, no doubt, is what was intended by the provision. We see, therefore, why it was that, "in the fourteenth item," it was thought necessary to repeat the limitation annexed to the sixth item, but to express it in a somewhat different form. The fact, then, of such repetition in the fourteenth item, does not prove that the limitation annexed to the sixth item was not meant to extend to all the intervening sections.

But let us see what would be the result of the construction contended for by the counsel for the creditors. The act described in the sixth item, to which the limitation as to time is expressly annexed, is, the act of destroying, mutilating, altering, or falsifying, books, documents, papers, writings, or securities. This is certainly one of the grossest frauds that could possibly be committed by a bankrupt, and if this must be committed since the passage of the act, in order to make it a ground upon which to refuse a discharge, it would be difficult to imagine upon what possible principle the same limitation was not extended to the acts described in the following items. A construction involving such a result certainly cannot be the true construction. At all events, it ought not to be adopted unless it is imperatively required by the language of the act. But again, by the construction contended for, if there is no limitation as to time with regard to the tenth item, there is none with regard to the ninth. The act described in the ninth item is, a "fraudulent preference contrary to the provisions of this act." Now, could it have been intended, that the mere fact of a bankrupt having, at any time before the passing of the act, given a preference to one or more of his creditors, would be a good ground upon which to oppose his discharge? By the term "fraudulent preference," of course, is meant only, a preference in fraud of the bankrupt act: that is, contrary to its provisions. But in New Jersey at least, before the passage of the bankrupt act, a debtor had a perfect right to prefer one creditor to another. This has been repeatedly decided by the supreme court of the state. Hendricks v. Mount. 2 South. [5 N. J. Law] 738; Tillou v. Britton, 4 Halst. [9 N. J. Law] 120. Nay, it has been held, that it was the duty of the debtor, under certain circumstances, to prefer one creditor to another. It cannot be imagined for one moment, that the framers of the law meant,

that an act committed before its passage, and which was perfectly lawful at the time it was done, would be a ground upon which to refuse a bankrupt his discharge.

Upon the whole, then, I am clearly of the opinion, that either the limitation as to time annexed to the sixth item, was intended to apply to all the intervening items between that and the fourteenth, or that these intervening items, having no limitation as to time annexed to them, must be construed in reference to the principle applicable to laws generally, which is, that they take effect only from the time of the passage. This is the view taken of the 39th section by those who have written upon the bankrupt act. James, after speaking of the fifth item says, "Next follows a series of misconduct or offences, which, to affect the bankrupt's order of discharge, must have been committed by him since the passage of the act." James, Bankr. 129. See, also, Avery & H. Bankr. 214, 220. This also would seem to be the view taken by Judge Blatchford, in Rathbone's Case, before referred to. One of the specifications was, fraud in an assignment made in 1854. It was objected to as being too vague. The objection was sustained, and leave granted to file new specifications. The specifications were then made more full and particular, and when the matter came up again, the judge said: "The second and third specifications relate solely to transactions by the bankrupt under and in regard to an assignment made by him in 1854. They do not set forth any ground that is covered by section 29 of the act." All the exceptions taken to the specifications filed in this case are therefore sustained.

[For subsequent proceedings in this litigation, see Case No. 12,057.]